# Exhibit "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

REYNOLDS LASSITER, and
AMI KIDS, INC.,

    Defendants.

vs.

NORMAN RUSSICK,

    Third-Party Defendant.

CASE NO. 1:21-cv-21452-CMA

## DECLARATION OF MICHAEL T. FITZGERALD IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Michael T. Fitzgerald declares pursuant to 28 USC §1746 as follows:

1. My name is Michael T. Fitzgerald and I reside in Ovilla, Texas. I have been asked to review relevant claim documents and depositions to provide an opinion as to the actions of a reasonable marine insurer/underwriter/claims handler in this case.

2. I have attached to this Declaration a copy of my Expert Witness Report dated December 27, 2021 and Resume. I confirm that the facts and opinion set forth in the Report and Resume are true and correct. I have, however, reviewed additional claim documents and depositions including, but necessarily limited to the depositions of Michael Grant and Captain Norman Russick.

3. I have more than forty (40) years of wet marine insurance experience both as a marine insurance broker and marine insurance underwriter, including Hull and Machinery (Hull)

and Protection and Indemnity (P&I). From 2000 until my retirement in January 2017, I was employed by Allianz Global Corporate and Specialty ("AGCS") f/k/a Fireman's Fund McGee Marine Underwriters (FFMMU) in Dallas, Texas as the Senior Underwriter for the Ocean Marine Department, which included yacht Hull policies.

4. Based upon my background, training and experience and knowledge of the facts and circumstances regarding the subject policy of insurance and the subject loss as a result of a grounding near Marco Island, Florida, I opine as follows:

a. The grounding and the sinking of the vessel on a shoal near Marco Island was a fortuitous event under the CSR yacht policy of insurance.

b. A reasonable/prudent yacht underwriter would not find the misrepresentation regarding a fourth degree misdemeanor for domestic violence in 2005 to be material in issuing the subject yacht insurance policy.

c. A reasonable, prudent and intelligent yacht underwriter/insurer would not increase the premium of a yacht policy for a fourth degree misdemeanor for domestic violence fifteen (15) years prior to issuing the subject yacht insurance policy.

d. A reasonable, prudent and intelligent yacht underwriter/insurer would not find the misrepresentation regarding a fourth degree misdemeanor for domestic violence in 2005 to be material in determining whether to accept the risk.

e. The industry standard for review and consideration of an insured's loss history, insurance history, criminal history and other history for issuance of a yacht insurance policy is five (5) years.

f. Captain Russick's presence on the bridge and in command of the vessel while his Engineer/Captain Michael Kutner had his hands on the helm under the direction,

control and responsibility of Captain Russick complies with the named operator warranty in the subject yacht insurance policy.

g. GREAT LAKES INSURANCE SE ("GREAT LAKES") it's managing general agent (CSR), assigned claims adjuster (Boulon) and claims surveyor (Grant) failed to comply with the insurer's *uberrimae fidei* - utmost good faith - obligations in the handling of the claim when they failed to notify the insured Reynolds Lassiter and the additional insured, AMI Kids, Inc., in a timely manner, i.e., within seven (7) days of the loss, that they did not consider Russick's presence on the bridge and in command of the vessel with Mr. Kutner on the helm, as discussed above, to comply with the named operator warranty in the subject yacht insurance policy. They should have notified the insured and additional insured of their position on this issue and allowed Captain Kutner to be added as an additional named operator, which Plaintiff has admitted it would have done. Instead, GREAT LAKES and its representatives took actions to avoid the claim and try to void coverage for the subject policy of insurance.

h. GREAT LAKES failed to comply with its contractual obligations and claims handling manual/practices by (1) relying on an incomplete investigation by its surveyor and assigned claims adjuster; (2) denying the claim for reasons not consistent with the policy provisions; and (3) denying the claim despite evidence that the loss and damages were due to a covered peril.

THIS CONCLUDES MY DECLARATION.

I declare under penalty of perjury of the laws of the United States of America and the State of Florida that the foregoing declaration is true and correct.

Executed this 16th day of March, 2022.

*Michael T. Fitzgerald*
Michael T. Fitzgerald

**Robert Hughes Associates, Inc.**
2100 N. Greenville Ave.
Suite 201-J
Richardson, TX 75082

December 27, 2021

Allan R. Kelley, Esq.
Fowler White Burnett, P.A.
1395 Brickell Avenue, 14th Floor
Miami, FL 33131

      Re:    "SHMILY"
              *Great Lakes Insurance SE v. Reynolds Lassiter and AMI Kids, Inc.*
              Case No.: 1:21-cv-21452-CMA

**EXPERT REPORT**

At the request of Mr. Allan Kelley, I have been asked to review relevant documents and provide an opinion as to the actions of a reasonable marine insurer/underwriter/claims handler.

**Documents**

To date, I have reviewed the following documents:

1. Amended Complaint
2. Lassiter's Answer to the Amended Complaint, Affirmative Defenses and Counterclaim
3. AMI's Answer to the Amended Complaint, Affirmative Defenses and Counterclaim
4. Plaintiff Great Lakes' responses to AMI's Interrogatories and Requests for Admission
5. Deposition Transcript of Beric Usher
6. Deposition Transcripts of Reynolds Lassiter
7. Deposition Transcript of Norman Russick
8. Deposition Transcript of Michael Kutner
9. Deposition Transcript of Revel Boulon
10. Deposition Exhibits

11. Great Lakes/CSR Claims File

12. Great Lakes/CSR Underwriting File

## Background

On July 24, 2020, Kolisch Marine Insurance, Inc. ("Kolisch"), yacht insurance brokers based in Coral Gables, Florida, submitted a yacht insurance application to Great Lakes (the "Original Application")(Exhibit "2"). The Original Application sought hull and machinery coverage on a 2001 85' Azimut motor yacht named "SHMILY" (the "insured vessel"). The Original Application asks, "Have you ever been convicted of a felony or DUI?" (Id.) Kolisch placed an "X" response in the box. (See Id.)

In response to the Original Application, Concept Special Risk ("CSR") issued a Quotation with the total premium of $19,255.00 and a $35 Certificate Fee on July 27, 2020. (Exhibit "4"). The Quotation, included, *inter alia,* the following additional warranties:

1. Warranted that the Scheduled Vessel is confined to the East Coast USA, Florida and the Bahamas -not to exceed 150 miles offshore. (Id.).
2. Warranted that a professional licensed captain must be on board whenever the Scheduled Vessel is navigating.
3. Warranted that the Scheduled Vessel is not to navigate south of the Tropic of Cancer July 1st to November 1st.

Kolisch is an approved and authorized insurance broker by Great Lakes. (Kolisch has brokered policies for CSR for more than twenty (20) years, including more than 200 vessels (Usher Deposition, page 16) with Great Lakes. CSR's US Operating Instructions for its authorized and approved brokers identifies various duties and responsibilities that the broker owes to Great Lakes (See, CSR - US Operating Instructions for Kolisch, Exhibit "28").

On or about August 17, 2020, Kolisch submitted to Great Lakes an application for an insurance policy on the "SHMILY" on a CSR Application form (the "CSR Application"). The CSR Application (Bates Lassiter_CF000069 item 12) asks, "Have you or any named

operator been convicted of a criminal offense or pleaded no contest to a criminal action?" (Exhibit "6"). Kolisch placed a "X" in the "No" response box. (*Id.*).

The CSR Application (Bates Lassiter_CF000069 item 10) additionally asked "Was any insurance declined, canceled or non-reviewed in the last five (5) years? And (Bates Lassiter_CF000069 item 11) have you or any named operator been involved in a loss in the last ten (10) years (insured or not)? An "X" was placed in "No" response box for each question.

Great Lakes issued a Temporary Binder on August 18, 2020 that was valid to September 17, 2020 ("Temporary Binder") (Exhibit "24"). Great Lakes issued marine insurance policy number CSRYP/184540 (the "Policy") on September 3, 2020 (Exhibit "10"). The Temporary Binder and the Policy had the same named operator and navigation warranties as the Quotation. (Exhibits "10", "20" and "24"). The policy afforded Hull & Machinery (Hull) insurance coverage for the Insured/Scheduled Vessel in the amount of $815,000 for a period of one (1) year commencing August 17, 2020. (Id.).

Approximately six (6) months later on February 8, 2021, the Scheduled Vessel grounded and sank while entering the Marco Island channel in , Florida. The Assured timely notified Great Lakes of the loss. Great Lakes investigated the incident and determined that it was covered as a Constructive Total Loss (CTL) under the insurance policy. As a covered CTL, Great Lakes would be responsible for the Agreed Value/Sum Insured of $815,000, sue and labor charge, salvage/wreck removal charges of $90,000, pollution mitigation expenses including the pickling/preservation of the vessel machinery expenses all of which CRS/Great Lakes found to be fair and reasonable. The salvage value of the "SHMILY" of $75,000 to be for the account of CSR/Great Lakes.

Once having determined the CTL and related expenses were covered, Great Lakes investigated whether the loss was excluded, or there was no coverage due to a breach of one (1)

or more of the policy terms, conditions, warranties or exclusion. (Deposition of Usher and Claims Manual Exhibit "38").

On February 21, 2021, Great Lakes' claims adjuster, Revel Boulon of Sedgwick in Pompano Beach, Florida, issued a Reservation of Rights Letter on behalf of CSR/Great Lakes that the individual at the helm of the vessel and operating it at the time of the incident...was not a named operator on the policy" and that a request for a retroactive approval of that operator was not submitted to underwriters within seven (7) days following the incident. The Insurers were, therefore, reserving their rights to extend coverage until their investigation was complete at which time a determination of coverage would be made.

On April 15, 2001, Great Lakes filed a Complaint for Declaratory Judgement against Lassiter and AMI Kids. Upon discovering additional information during litigation, Great Lakes amended its complaint to add a claim for Lassiter's failure to disclose "facts about his criminal history." Count I of the Amended Complaint alleges that at the time of the grounding the vessel was being operated by Captain Michael Kutner, who was not a named operator/covered person. Therefore, Defendants breached the named operator warranty.

Section 9. General Conditions and Warranties contains, among others, the following warranties:

1. It is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire, lease or any other commercial activity.
2. This insurance agreement incorporates in full you application for insurance and together with any endorsement issued herein, constitutes the entire contract between us. At your request, various provision of this insurance agreement may be varied by us but only by our prior written agreement.
3. If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, where actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.
4. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

5. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to the our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.
6. It is warranted that the scheduled vessel will operated only by covered persons, in the event of an incident occurring where the vessel is being operated by any person other than the covered person that may give rise to a claim under this insurance, you have a period of seven (7) days following such an incident to submit details of the operator for retroactive approval by underwriters. Such approval not to be unreasonably withheld.

Section I. Definitions of the Policy contains, among others, the following definition:

1. 'Covered person,' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel.
2. Operate, operation, operating means to navigate or to be in physical control of or to be at the helm of the scheduled vessel. (emphasis added).

This contract is null and void in the event of a misrepresentation of a fact or circumstances **material** to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision. (emphasis added).

In 2005, Lassiter pled guilty to a fourth degree misdemeanor in Washington State related to the spanking of one (1) of his six (6) children in the airport in Seattle, Washington on or about August 16, 2005.

Great Lakes has stated in Answers to Interrogatories from Lassiter and AMI Kids that Lassiter failed to complete/comply with the following survey recommendations:

1. That the emergency fire pump had been properly serviced and reconnected.
2. That a spare anchor had been installed aboard, complete with required chain and nylon road.
3. That three (3) smoke detectors had been properly installed.
4. That five (5) CO detectors had been properly installed.
5. That a Waste Management plan had been documented aboard the vessel.
6. That standard securing nuts with lock washers had been installed on the battery terminals per ABYC standards, rather than wing nuts.

Great Lakes does not dispute the fact that none of the above survey recommendations

caused or contributed to the Incident/Loss. There are also factual questions whether some of the items were performed. Interestingly, items five (5.) and six (6.) above were only recently added to the list. Item (1.) the fixed fire extinguishers (or the emergency fire pump which is it) being properly serviced, which Mr. Usher identified as the most significant item, has been removed from the list because satisfactory proof of compliance was provided by AMI Kids (Florida Fire Services Invoice and Report – Exhibit 39).

## Issues

I have been asked to opine on the following questions:

1. Whether a reasonable/prudent Yacht marine underwriter, as opposed to CSR, as the Managing General Agent (MGA) for Great Lakes, would find the alleged misrepresentation regarding a fourth degree misdemeanor domestic violence with Mr. Lassiter's daughter in the Seattle, Washington Airport in 2005 is material when offering Yacht insurance coverage in August 2020.

2. Whether Captain Russick's presence on the bridge and in command of the vessel while his engineer/Captain Kutner had his hand on the helm of the vessel but under the direction, control and responsibility of Captain Russick violates the named operator warranty to preclude coverage under the Yacht insurance policy.

3. Whether the alleged misrepresentations or breaches of warranty regarding the failure to complete certain survey recommendations are material for a Yacht insurance policy or are causally (causationally) connected or related to the loss.

4. Whether CSR/Great Lakes complied with its *uberrimae fidei* - utmost good faith obligations under general admiralty law.

## Opinions

The CSR Underwriting Manual identified two (2) principal aspects of any yacht risk,

Vessel Acceptability

Owner/Operator Acceptability

The manual specifically states "All underwriting is about looking for patterns where in certain circumstances there is a reasonably predictable outcome, for example, we would expect a teenager at the wheel of a Porsche to be a recipe for a disaster."

With respect to owner/operator acceptability the manual identifies; anyone with a conviction for any offense involving dishonesty; drug and alcohol convictions including driving under the influence of alcohol unless there is an extenuating circumstance; and anyone with a pattern of behavior that may affect how he operates his vessel (a risk. (Exhibit "2").

The CSR Rating Guide V5 (Last Amended: 10 January 2018)Underwriting Guide for setting the premium for vessels to be insured by Great Lakes does not contain any reference to adjustments for criminal convictions. The CSR Rate Sheet for the Insured Vessel does not contain references, discounts or increases for criminal convictions. (Exhibits "35" and "36"). Great Lakes' corporate representative, CSR's managing director, testified that any adjustments for convictions are made at his sole and exclusive discretion without any written standards to support same. In this case, he states that he would have insured the vessel but made a nominal adjustment for any criminal conviction regardless of its nature, extent, materiality or age. This is an arbitrary and capricious action and not the action of a reasonable/prudent Yacht underwriter.

CSR Claims Manual

Section 1. acknowledges the following:

> A fact is material if it would influence the mind of a reasonably prudent underwriter when determining whether to accept the risk, if so upon what terms and at what level of premium.
> The manual states that CSR should always request a written explanation from the Assured where information is brought to light showing that a misrepresentation or non-disclosure has taken place. (As respects criminal charges, Kolish Insurance and not Mr. Lassiter completed the CSR Yacht Application.)   Where it can be shown there was no intention to mislead, this may be a mitigating factor. (Exhibit "38").

Great Lakes states that it would have retroactively add Captain Kutner as a named operator based on his marine license, background training and experience provided he answered the questions concerning any prior losses and criminal history in the negative or with an appropriate explanation. Mr. Boulon and Mr. Grant as CSR/Great Lakes' claims adjustor and

claims surveyor failed to provide proper assistance and claim guidance to the Assured during the seven (7) days retroactive named operator approval window. Soon after the seven (7) day window closed Mr. Boulon had issued a Reservation of Rights Letter on behalf of CSR/Great Lakes.

Section 2. General Principals on Claims Handling: "All claims should be handled promptly and fairly" and payment should be made promptly once settlement terms have been agreed and with payment to be within a minimum (this appears to be a typo, "maximum" makes more sense) of thirty (30) days of the agreement. (Claims Manual - Exhibit 38)

Section 3. Giving Consumers Guidance on Claiming provides:
When we are informed that an Assured wishes to claim under their policy we should provide our Assured with reasonable guidance to help them make a claim under their policy. Although we believe that "your duties in the event of a loss" as set out within our policy wording and our claims guidance web site satisfy this, we should attempt to assist at each and every occasion. CSR/Great Lakes acting through their Claims Adjustor, Mr Boulon, and their Claims Surveyor, Mr. Grant, failed to provide their Assured, Mr. Lassiter, with the appropriate claims guidance and assistance. In other words, they failed to act, as required, with "Utmost Good Faith". At the outset of the claim, CSR/Great Lakes Claims Adjuster, Revel Boulon instructed the claims surveyor, Mr. Grant, to speak with the vessel's captain, Norman Russick, to obtain information regarding the navigation of the vessel, who was aboard and navigating the vessel, whether the vessel was engaged in charter operations, or was for sale (Exhibit 55).

In Mr. Boulon's Initial Report, he identifies reasons to deny coverage. He was not seeking to help the Assured with the claim. Rather than advising the Insured within seven (7) days to have Mr. Kutner added as a named operator because in his opinion the presence of Captain Russick on the bridge in command, control and responsible for the navigation of the vessel did not meet the requirements of the named operator warranty.

I strongly disagree with him on this issue. Captain Russick's presence on the bridge at the time of the incident satisfied the named operator requirement of the policy. If, however, Mr. Boulon, CSR or Great Lakes did not agree, then they should have immediately notified their Assured, Mr. Lassiter, so that he could apply for Mr. Kutner to be added as a named operator within the seven (7) days or extended the seven (7) day requirement if they were to act in "Utmost Good Faith." (CSR Claim Manual – Exhibit 38)

Section 16 Misrepresentation Non – Disclosure

When seeking to avoid coverage based on a misrepresentation/non-disclosure the CSR Claims Manual states that where there is no intention to mislead it may be a mitigating factor. This does not appear to have been considered by Great Lakes or CSR with the Lassiter and AMI claim.

Section 16. goes on to state: "where we have decided (or have received instructions from our principles) to void a policy as a result of either a non-disclosure or misrepresentation, we will also tender the premium paid by the Assured along with our letter of avoidance." Neither Great Lakes nor CSR has tendered the return of the premium contrary to this clear and unequivocal directive and statement.

Section 17. Rejecting or Denying Claim states: "We should not unreasonably reject a claim made by an Assured.

1.  Without good and sufficient reason.

Or refuse to meet a claim made by an Assured on the grounds;

...

3. In the case of breach of warranty or condition, where the only ground for rejection is the breach of warranty unless the circumstances of the claim are connected with the breach; or unless the breach relates to the safety of the vessel, its crew or a member of the public.

Great Lakes and CSR have not met this obligation as they have not provided good and

sufficient reason for denial of the claim and the alleged breaches of warranty in this case did not cause or contribute to the cause of the incident/loss. (Plaintiff's Responses to AMI Kids' First Set of Interrogatories No. 8).

Section 24. Complaints Management states: "We should always try to give our policyholders reasonable guidance in pursuing a claim under their policy."

As explained by Mr. Lassiter in his deposition, "two captains are better than one." (Page 49, Line 1; Page 140, Line 9; and Page 267, Line 24). He relied upon his named operator, Captain Russick, a professional, licensed Captain, who was in command and control of the vessel and crew. If the vessel could only have one (1) person with their hands on the helm, as claimed by CSR, then whenever the named operator, Captain Russick, had to use the head, the vessel would need to be powered down and brought to an idle in order for the named operator to use the head. Then upon the named operator's return to the helm to physically take "hands on" control of the vessel's wheel, the vessel could be powered up to continue on its way to its intended destination. Great Lakes and CSR's interpretation of the named operator clause of the policy is arbitrary, capricious and not reasonable.

In his first report, Mr. Boulon is eager to issue the Reservations of Rights letter while giving Mr. Lassiter false hope that a determination of coverage had not been made pending receipt of additional information. In fact, Mr. Boulon was merely waiting to receive confirmation from the Assured that Mr. Kutner had his "hands on" the helm. Mr. Boulon made it sound like CSR was considering whether or not to make Captain Kutner an after the fact, named operator, when, in fact, it had no intention to do so.

A damage surveyor is charged with documenting the circumstances leading up to an accident/incident; providing a detailed description of the damages sustained; providing an assessment of whether the extent of damages has rendered the vessel a Total Loss (TL), Constructive Total Loss (CTL) or is repairable and issuing a survey report that details those

facts. If the vessel is deemed to be repairable, the assignment may include recommending one or more shipyards who were capable of making the necessary repairs at a fair and reasonable price. The surveyor should not be tasked with seeking to obtain from the Assured information for the Yacht underwriter to deny coverage.

The marine insurance industry standard when considering/underwriting an account is based on the account's five (5) year premium and loss record. In the case of Great Lakes v. Sunset Watersports Mr. Usher, as a representative of CSR/Great Lakes, did not dispute the five (5) year premium and loss standard. Rather he took the position that the CSR insurance application can ask each person wishing to be approved as a "covered person" (an owner and/or named operator) to provide his or her criminal record, if any, for life; personal vessel loss record for the past ten (10) years; and personal driving record for the last five (5) years

At Mr. Usher's deposition, he stated that he would have agreed to include Captain Kutner as named operator subject to review of Captain Kutner's life long criminal history; ten (10) years of personal vessel loss history and his five (5) year driving record. He did not, however, do so before issuing a reservation of rights and filing a declaratory judgment action. He has also failed to update this statement after questioning of Mr. Kutner by Great Lakes' counsel at Mr. Kutner's deposition testimony.

Section 11. Applicable Law, states:

We issue a form of policy that incorporating a choice of law clause. The clause it selected provides for "the application of Federal Admiralty Law as the law governing for any disputes between our Assured and our Principals." (Exhibit 38).

In the CSR Rating Guidelines, there is a rating credit applied if the risk is subject to English law. If subject to English law, the Hull coverage credit is minus ten (-10%) percent and for the Liability coverage the credit is minus thirty (-30%) percent. No credit was applied to the subject account because the risk was subject to US Admiralty Law and according to the last page of the

application the applicable (Florida) State law with the possible penalty under Florida law for providing false information in connection with a filed insurance claim. (Exhibit 6).

## Summary of Opinions

The grounding and sinking of the vessel on a shoal in the Marco Island Channel was a fortuitous event covered under the CSR Yacht Policy. The vessel was rendered a CTL as result of the grounding. Accordingly, Great Lakes should pay the Agreed Value of $815,000.00, salvage charges of $90,000.00, and the pollution mitigation expenses, the Assured's sue and labor expenses and the Florida Yacht charges of $61,740.02. This should have been paid to the Insured within thirty (30) days of presentation of the claim. The attempt by Great Lakes/CSR to avoid the claim because the loss is excluded, or there is no coverage for breach of some policy term or the Insured is not supported by the facts and law and violates its duty to act in "Utmost Good Faith". Mr. Lassiter has acted in "Utmost Good Faith" but Great Lakes and CSR and their assigned Claims Adjustor, Mr. Boulon, and Claims Surveyor, Mr. Grant, not acted in "Utmost Good Faith" in the handling of this claim.

## Conclusions

1. A reasonable/prudent Yacht underwriter would not find misrepresentation regarding a fourth degree misdemeanor for domestic violence in 2005 to be material in issuing the subject Yacht insurance policy. The owner was not requesting to be a named operator under the direct and extensive supervision of Captain Russick. Rather, the risk being offered was a Yacht to be operated by a paid qualified crew only. The crew's qualifications and not the Owner's being of paramount importance.

2. Captain Russick's presence on the bridge and in command of the vessel while his Engineer/Captain Kutner had his hands on the vessel's helm but under the direction, control and responsibility of Captain Russick complied with the named operator warranty in the subject Yacht insurance policy.

3. The alleged misrepresentation/breach of warranty related to survey recommendations did not cause or contribute to the cause of the loss and, therefore, there is coverage for the loss under the subject Yacht insurance policy.

4. Great Lakes' agents, servants and/or employees did not comply with their *uberrimae fidei* – utmost good faith - obligations in the handling of the claim and, therefore, Great Lakes should be barred from denying the claim.

5.  Mr. Revel Boulon testified (Deposition pages 16 and 17) that he has handled "in excess of 100 claims" for CSR. Of the CSR claims handled there have been concerns about that (the named operator requirement) on more than 10. In light of the frequency of claims where the named operator requirement becomes an issue, when assigning a claims surveyor (in this case Michael Grant) the primary instructions from Mr. Boulon to the surveyor should be: As soon as possible, please visit with our Assured to determine if the named operator requirement is going to be an issue. If the named operator requirement is an issue, please assist our Assured with getting the new operator named approved during the seven (7) retroactive approval window. Such actions by Mr. Boulon and Mr. Grant would be viewed as the ultimate act of "Utmost Good Faith" by them on behalf of CSR/Great Lakes. In this instance, when assigning the claims surveyor, Mr. Boulon's list of action items for the surveyor included:

a.  has there been any commercial/charter use of the "SHMILY", which would be in violation of the policy business and pleasure only use.

b.  is the vessel up for sale (a change of ownership without underwriters written consent would result in automatic cancellation of the policy).

c.  conspicuous by its absence is offering assistance and guidance to the Assured to eliminate any potential problem/issue with the named operator policy requirement.

It is clear that Mr. Boulon and, as their trusted and frequently used Florida Claims Adjustor, CSR and Great Lakes have no interest in acting in "Utmost Good Faith".

s/Michael Fitzgerald
Michael Fitzgerald
Robert Hughes Associates, Inc.
2100 N. Greenville Ave.
Suite 201-J
Richardson, TX 75082
