UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-21452-CIV-ALTONAGA/Torres

**GREAT LAKES INSURANCE SE**,

Plaintiff,

v.

**REYNOLDS LASSITER**, *et al.*,

Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Great Lakes Insurance SE's Motion for Summary Judgment [ECF No. 122], filed on March 8, 2022; Defendant, Reynolds Lassiter's Motion for Partial Summary Judgment [ECF No. 125], filed on March 10, 2022; Defendant/Cross-claim Plaintiff, AMIKids, Inc.'s Motion for Summary Judgment Against Defendant Reynolds Lassiter [ECF No. 126], filed on March 10, 2022; Defendant/Counterclaim Plaintiff, AMIKids, Inc.'s Motion for Partial Summary Judgment Against Great Lakes [ECF No. 128], filed on March 10, 2022; and Third-Party Defendant, Norman Russick II's Motion to Bifurcate or Separate First-Party and Third-Party Trials [ECF No. 130], filed on March 10, 2022.[1]

AMIKids and Lassiter filed respective Response[s] [ECF Nos. 134 & 136] to Great Lakes's Motion, to which Great Lakes filed Repl[ies] [ECF Nos. 155 & 157]. Likewise, Great Lakes filed respective Response[s] [ECF Nos. 144 & 146] to Lassiter's and AMIKids's Motion[s], to which AMIKids and Lassiter filed Repl[ies] [ECF Nos. 159 & 163]. Lassiter also filed a Response [ECF No. 138] to AMIKids's Motion, to which AMIKids filed a Reply [ECF No. 165]. Finally, Lassiter and AMIKids filed Response[s] [ECF Nos. 139 & 147] to Russick's Motion.

---

[1] Hereinafter the "Motions."

CASE NO. 21-21452-CIV-ALTONAGA/Torres

After carefully considering the parties' written submissions,[2] the record, exhibits, and applicable law, Great Lakes's Motion for Summary Judgment and AMIKids, Inc.'s Motion for Summary Judgment Against Lassiter are granted in part; the remaining Motions are denied.

## I.     BACKGROUND[3]

This action centers around a vessel named *Shmily* that ran aground and sank on February 8, 2021.  (*See* Great Lakes's SOF ¶¶ 1, 40).  AMIKids owned *Shmily* and leased it to Lassiter prior to the incident.  (*See* AMIKids's SOF Against Great Lakes ¶ 3).

Like most boaters, Lassiter sought out an insurance policy for the vessel.  He used Captain Norman Russick and Kolisch Marine Insurance, Inc. as intermediaries to obtain insurance from Great Lakes.  (*See* Great Lakes's SOF ¶¶ 18–19).  When Russick and Joe Kolisch submitted application materials to Great Lakes, they failed to disclose Lassiter's 15-year-old misdemeanor

---

[2] The parties' factual submissions include: Great Lakes's Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment ("Great Lakes's SOF") [ECF No. 121]; Lassiter's Statement of Material Facts ("Lassiter's SOF") [ECF No. 124]; AMIKids's Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment Filed Against Reynolds Lassiter ("AMIKids's SOF Against Lassiter") [ECF No. 127]; AMIKids's Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment Fild [sic] Against Great Lakes ("AMIKids's SOF Against Great Lakes") [ECF No. 129]; AMIKids's Statement of Material Facts in Opposition to Motion for Summary Judgment Filed by Great Lakes ("AMIKids's Resp. to Great Lakes's SOF") [ECF No. 133]; Lassiter's Response and Additional Facts to Great Lakes's Statement of Material Facts ("Lassiter's Resp. to Great Lakes's SOF") [ECF No. 135]; Lassiter's Response and Additional Facts to AMIKids's Statement of Uncontested Material Facts ("Lassiter's Resp. to AMIKids's SOF") [ECF No. 137]; Great Lakes's [Corrected] Statement of Material Facts in Opposition ("Great Lakes's Resp. to Lassiter's SOF") [ECF No. 153-1]; Great Lakes's Statement of Material Facts in Opposition ("Great Lakes's Resp. to AMIKids's SOF") [ECF No. 145]; Great Lakes's Reply Statement of Material Facts to AMIKids's Statement of Material Facts ("Great Lakes's Reply to AMIKids's SOF") [ECF No. 154]; Great Lakes's Reply Statement of Material Facts to Reynolds Lassiter's Statement of Material Facts in Opposition ("Great Lakes's Reply to AMIKids's SOF") [ECF No. 156]; AMIKids's Reply Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment Filed Against Great Lakes ("AMIKids's Reply to Great Lakes's SOF") [ECF No. 160]; AMIKids's Reply Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment Filed Against Reynolds Lassiter ("AMIKids's Reply to Lassiter's SOF") [ECF No. 162]; and Lassiter's Response to Plaintiff's Corrected Statement of Material Facts in Opposition ("Lassiter's Reply to Great Lakes's SOF") [ECF No. 164].

[3] Facts in this section are undisputed unless otherwise noted.

domestic violence guilty plea.  (*See id.* ¶¶ 13, 56; AMIKids's SOF Against Great Lakes ¶ 22).

Great Lakes approved the application and awarded the Policy [ECF No. 121-1] to Lassiter without

knowing about his prior conviction.  (*See* Great Lakes's SOF ¶¶ 1, 34).

Several aspects of the Policy merit mention: the Policy insures Lassiter, lists AMIKids as

a loss payee, and limits overall recovery to $815,000.  (*See id.* ¶¶ 1–2; AMIKids's Resp. to Great

Lakes's SOF ¶¶ 1–2).   The parties dispute to what extent the Policy also insured AMIKids.

(*Compare* Great Lakes's SOF ¶ 2, *with* AMIKids's Resp. to Great Lakes's SOF ¶ 2).

Among the Policy's relevant provisions, the Named Operator Warranty requires that only

covered persons may operate the vessel:

> It is warranted that the Scheduled Vessel will be operated only by covered persons.
> However, in the event of an incident occurring when the vessel is being operated
> by any person other than a covered person that may give rise to a claim under this
> insurance, you have a period of seven days following such an incident to submit
> details of the operator for retroactive approval by underwriters.  Such approval not
> to be unreasonably withheld.

(Policy 16).[4]

"Covered person" includes "any person detailed on [Lassiter's] application form which has

been submitted by you and approved by us, provided that person has been declared to us in writing

as an *operator* of the Scheduled Vessel."  (*Id.* 3 (alteration and emphasis added)).   The Policy

defines "operate" as the "means to navigate or to be in physical control of or to be at the helm of

the Scheduled Vessel."  (*Id.* 4).

With few, if any, exceptions, the Policy requires strict adherence to warranties, like the

Named Operator Warranty:

> Where any term herein is referred to as a "warranty" or where reference is made
> herein to the term "warranted," the term shall be deemed a warranty and regardless
> of whether the same expressly provides that any breach will void this insuring

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers
of all court filings.

agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

(*Id.* 14).

Because the Policy designates Russick as the Named Operator, he is a "covered person" for purposes of the Named Operator Warranty. (*See* AMIKids's SOF Against Great Lakes ¶ 9). First Mate Michael Kutner is not listed as a covered person under the Policy. (*See generally* Policy).

On the day of the accident, Russick, along with Kutner, Lassiter, Mark Mosley, and Olivia Hansen took the vessel out near the Marco Island Channel. (*See* Great Lakes's SOF ¶¶ 40–41). The purpose of the voyage was to test the vessel's durability. (*See id.* ¶ 42). Russick helmed the vessel until he felt tired and asked Kutner to take over the helm for the stretch of the trip between Sanibel and Marco Island. (*See id.* ¶¶ 43, 45).

Kutner had recently navigated in the area and advised Russick "that shoals or sandbars are known to arise within the navigational markers located in the channel." (AMIKids's SOF Against Lassiter ¶ 11). Russick stood near Kutner and was monitoring the channel markers, chart plotter, and depth sounder as the vessel abruptly ran aground. (*See id.* ¶ 12). Russick retook the helm after Boat US reported it did not have a vessel large enough to dislodge the *Shmily*. (*See* Great Lakes's SOF ¶ 52).

Great Lakes later learned that Kutner had helmed the vessel on three prior occasions: once in December 2020 and twice in January 2021. (*See id.* ¶ 54). The parties nonetheless agree that on February 8, 2021, Russick remained on the bridge and in command of the vessel while Kutner helmed the vessel. (*See* Lassiter's SOF ¶ 39; Great Lakes's Resp. to Lassiter's SOF ¶ 39). The parties disagree, however, as to whether Russick was "operating" the vessel as defined by the Policy. (*Compare* Lassiter's SOF ¶ 39, *with* Great Lakes's Resp. to Lassiter's SOF ¶ 39).

After the incident, Lassiter submitted a Notice of Loss to Great Lakes, demanding full payment for the $815,000 value of the vessel; $90,000 for the salvage amount; and labor charges of $61,740.02.  (*See* Lassiter's SOF ¶ 55).  Great Lakes investigated the incident and determined Lassiter breached several warranties in the Policy.  (*See* Second Am. Compl. ("SAC") [ECF No. 100] ¶¶ 16–17).

The SAC describes each of the relevant breaches for purposes of the Motions: (1) the first cause of action asserts that Lassiter breached the Policy when Kutner, as an individual not covered by the Policy, operated the vessel (*see id.* ¶¶ 21–26); (2) the third cause of action alleges the Policy is void because Lassiter omitted his prior conviction on the insurance application (*see id.* ¶¶ 33–42); and (3) the fourth cause of action asserts AMIKids cannot file a claim or recover under the terms of the Policy because it is only a loss payee, not the Named Insured (*see id.* ¶¶ 43–49).

## II.      LEGAL STANDARDS

### A.      <u>Summary Judgment</u>

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.* (citation omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The Court draws all reasonable inferences in favor of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

"Cross-motions must be considered separately, as each movant bears the burden of

establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote call number omitted). If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted).

"Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted). "When the moving party has the burden of proof at trial, that party must show . . . . that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (alteration added; citations and emphasis omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

**B.**   **Bifurcation**

Federal Rule of Civil Procedure 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b) (alteration added). "Rule 42(b) confers broad discretion on the district court in this area, as the Rule permits bifurcation merely in furtherance of convenience." *Lapham v. Gov't Emps. Ins. Co.*, No. 8:19-cv-2016, 2019 WL 11074777, at *2 (M.D. Fla. Nov. 19, 2019) (quotation marks and citation omitted). "Ultimately, whether to bifurcate a trial is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-cv-60268, 2019 WL 5617937, at *2 (S.D. Fla. Oct. 31, 2019) (alteration adopted; quotation marks and citation omitted).

### III.   DISCUSSION

**A.**   **Great Lakes's, AMIKids's, and Lassiter's Motions for Summary Judgment**[5]

Great Lakes argues that no material dispute of fact prevents the Court from concluding that (1) the Policy is void due to Lassiter's breach of the Policy's Named Operator Warranty (*see* Great Lakes's Mot. 6); (2) the Policy never went into effect because Lassiter omitted material information on his application (*see id.* 9); and (3) as a simple loss payee, AMIKids cannot recover under the Policy (*see id.* 12).

---

[5] Lassiter's and AMIKids's Motions present nearly identical arguments as their Responses to Great Lakes's Motion.  Instead of repetitively addressing each Motion separately, the following analysis addresses Great Lakes's Motion, the respective Responses, and Replies.  To the extent that Lassiter or AMIKids asserts a novel argument in other filings, the Court includes these arguments in the ensuing analysis.

CASE NO. 21-21452-CIV-ALTONAGA/Torres

### i.   Named Operator Warranty

Great Lakes argues Lassiter breached the Named Operator Warranty when Kutner helmed the vessel.  The success of Great Lakes's argument hinges in part on which jurisdiction's law applies — an issue the parties hotly contest.

***Choice of Law.***  Marine insurance contracts fall within federal courts' admiralty jurisdiction and are governed by maritime law.  *See GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019).  When admiralty jurisdiction applies, established federal rules of law govern over state law.  *See Wilburn Boat Co. v. Fireman's Fund Ins. Co*., 348 U.S. 310, 314 (1955) ("[I]n the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty.  And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." (alteration added; citation omitted)).  State law only applies in the absence of a judicially fashioned admiralty rule.  *See Shackleford,* 945 F.3d at 1139 (quoting *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1302 (11th Cir. 2015)).

The Policy's choice-of-law provision accurately reflects the balance between state and federal law but opts for New York instead of Florida law.

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

(Policy 17 (emphasis omitted)).

The parties agree that federal maritime law trumps state law.  (*See* AMIKids's Resp. to Great Lakes 9; Lassiter's Resp. to Great Lakes 2 n.3).[6]  But Lassiter and AMIKids insist that

---

[6] According to AMIKids, Great Lakes waived any reliance on the choice-of-law provision because it "did not allege in its original, amended, or second amended complaint that its claims are governed by New York

8

Florida, not New York law must supplement any void left by federal maritime law. (*See* AMIKids's Resp. to Great Lakes 9; Lassiter's Resp. to Great Lakes 1–2).

Of course, the parties' choice-of-law dispute serves no purpose if entrenched federal maritime law governs the Named Operator warranty, but as Lassiter correctly points out, no such law exists. (*See* Lassiter's Resp. to Great Lakes 2 n.2 (citations omitted)); *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1169 (11th Cir. 2021) ("[T]here is no established and entrenched federal precedent concerning the effect of a breach of a 'named operator' warranty[.]" (alterations added; quotation marks omitted; quoting *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010))).

The question then becomes, does Florida or New York law apply? Under the general rule, a choice-of-law provision controls "unless the state in question 'has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law.'" *Rosin*, 757 F. Supp. 2d at 1250–51 (quoting *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)).

Lassiter lists an impressive array of facts to argue that New York shares no relationship to

---

law." (AMIKids's Reply to Great Lakes 5). AMIKids understandably omits any support for this argument because there is none.

It then contends that Great Lakes waived the choice-of-law provision because Great Lakes "argues for the application of case law from . . . multiple non-New York jurisdictions[.]" (*Id.* (alterations added)). In other words, AMIKids believes that a party waives a choice-of-law provision by citing decisions from other jurisdictions. (*See id.* (collecting cases)). Putting aside the ridiculous implications of this argument, AMIKids's cited authorities address situations where a party sought to enforce a choice-of-law provision after failing to invoke the choice-of-law provision. *See Migdal Ins. Co., Ltd. v. Schenker Int'l Inc.*, No. 07-21011-Civ, 2009 WL 10669110, at *3 n.4 (S.D. Fla. Mar. 25, 2009) (concluding the plaintiff waived a New York choice-of-law clause because plaintiff "fail[ed] to raise the applicability of New York law[.]" (alterations added)); *Dependable Component Supply Corp. v. Lear Corp.*, No. 06-61105-Civ, 2007 WL 9700500, at *5 (S.D. Fla. Feb. 20, 2007) ("In [d]efendant's [m]otion, [d]efendant relies on Federal caselaw and the Federal Arbitration Act itself. In opposition to the motion, [p]laintiff relies on Florida law." (alterations added)), *report and recommendation adopted*, 2007 WL 9698314 (S.D. Fla. May 14, 2007). That is clearly not the case here given Great Lakes maintains that the choice-of-law clause controls. (*See* Great Lakes's Mot. 6–7).

the parties or this insurance dispute:

> Great Lakes is not a New York corporate entity and it does not have its principal place of business in New York.
>
> . . . .
>
> [The managing general agent, Concept Special Risks] maintained a strong presence in Florida.
>
> . . . .
>
> [T]he producing and surplus lines agent[] issued the Policy pursuant to Florida's Surplus Lines law and delivered the Policy to the Assured and Additional Assured in Florida.
>
> . . . .
>
> The insured Vessel is registered in Florida and its home port is in Destin, Florida. AMIKids [], of St. Petersburg, Florida, is the Vessel's owner, as well as the Policy's Additional Assured and Loss Payee. The Vessel ran aground and sank near Marco Island, Florida. All three crewmembers aboard the Vessel at the time were and are citizens and residents of Florida.
>
> . . . .
>
> Great Lakes' Reservation of Rights Letter was sent by its appointed Florida adjuster[.]
>
> . . . .
>
> (i) the Vessel's owner was/is in Florida; (ii) the Vessel's lessee is based out of North Carolina; (iii) the Vessel was registered, flagged and had its home port in Florida; and (iv) the Vessel was subject to the navigational limits of the East Coast of the United States, Florida and the Bahamas.

(Lassiter's Resp. to Great Lakes 3–5 (alterations added; capitalization and emphases omitted)).

None of these facts, however, excludes the possibility that Great Lakes also shares a substantial relationship with New York. Certainly, the issue is not whether the state has a *greater* relationship to the parties or transaction than another state, but whether the state has a *substantial* relationship to the parties or transaction. *See Rosin*, 757 F. Supp. 2d at 1250–51. And as Great Lakes points out, many facts weigh *against* Florida:

CASE NO. 21-21452-CIV-ALTONAGA/Torres

> Great Lakes is an eligible surplus lines insurer in all 50 of the United States; Great Lakes issues marine insurance policies throughout the United States; neither Great Lakes nor Concept are [sic] registered with the Florida Department of State, Division of Corporations, as a foreign company doing business in Florida; neither Great Lakes nor Concept maintain [sic] any offices in Florida; neither Great Lakes nor Concept have [sic] any employee or agents in Florida.

(Great Lakes's Resp. to Lassiter 5 (capitalization omitted)).

Turning to factors that favor New York, Great Lakes provides several bases to conclude that it shares a substantial relationship with New York:

> 1) Great Lakes first applied to be and is admitted as a surplus lines insurer in New York, 2)) [sic] Great Lakes maintains its United States Trust Fund account in the State of New York, 3) Great Lakes's agent for service of process is in the State of New York, and 4) Great Lakes is a wholly owned subsidiary of Munich Re, which owns American Re, and the office [sic] of both Munich Re and Munich American Reassurance Company are located in New York.

(*Id.* 4 (capitalization omitted)).

Courts have concluded that such contacts are sufficient to satisfy the substantial relationship test. *See Rosin*, 757 F. Supp. 2d at 1251; *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 521 F. Supp. 3d 580, 586 (E.D. Penn. 2021). The undersigned finds no reason to disagree.

Next, Lassiter argues the choice of law clause "is invalid and unenforceable because it is 'unreasonable or unjust.'" (Lassiter's Resp. to Great Lakes 6 (quoting *Great Lake Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 244 (5th Cir. 2009))). This argument hinges on Lassiter's mistaken assumption that the correct choice-of-law test evaluates whether the chosen state's laws "conflict 'with the fundamental policy *of a state*'" with a superior interest. (*Id.* (emphasis in original; quoting Restatement (Second) of Conflict of Laws § 187(2) (Am. L. Inst. 1988))). Yet as Lassiter acknowledges, most, if not all, precedent evaluates whether the chosen "state's law conflicts with the fundamental purposes of *maritime law*." (*Id.* (quotation marks and some emphasis omitted; quoting *Stoot*, 851 F.2d at 1517; other citations omitted)).

Lassiter attempts to distinguish the crushing precedent by suggesting that those courts "misstate[d] . . . the test under [the Restatement]." (*Id.* 6–7 (alterations added)). He maintains that confusion originates from the Fifth Circuit's decision in *Stoot*. (*See id.* 6 (citing 851 F.2d 1514)). Alas, it is Lassiter, not the courts, who is confused.

In *Stoot*, the Fifth Circuit considered whether a Louisiana statute that voided certain indemnification agreements applied to a maritime action. *See* 851 F.2d at 1516. The court applied the now-familiar standard that "where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Id.* at 1517 (citing *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (W.D. La. 1984)). The court ultimately concluded that Louisiana law applied to the dispute. *See id.* at 1518

Diving deeper into precedent, Lassiter argues *Stoot* misapplied *Hale*. (*See* Lassiter's Resp. to Great Lakes 6–7). In *Hale*, the court relied on section 187 of the Restatement (Second) of Conflicts of Laws, in fashioning the following choice-of-law test:

> Under admiralty law, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless . . . application of the law of the chosen state would be contrary to a fundamental policy of the *jurisdiction* which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties.

*Hale*, 588 F. Supp. at 1215 (alteration and emphasis added; footnote call number omitted; citing Restatement (Second) of Conflict of Laws § 187(2) (Am. L. Inst. 1971); other citation omitted). According to Lassiter, a correct reading of *Hale* requires that the Court evaluate whether New York law conflicts with a fundamental policy of Florida because Florida is the "*jurisdiction* which would provide the rule of decision" in the absence of Great Lakes's choice-of-law clause. (Lassiter's Resp. to Great Lakes 7 (some emphasis omitted; quotation marks omitted; quoting *Hale*, 588 F. Supp. at 1215)).

CASE NO. 21-21452-CIV-ALTONAGA/Torres

Lassiter misunderstands *Hale*.  The "*jurisdiction* which would provide the rule of decision" is maritime jurisdiction, not Florida.  *Hale*, 588 F. Supp. at 1215 (emphasis added; footnote call number omitted).  Lassiter even stipulated to this effect.  (*See, e.g.*, Lassiter's Resp. to Great Lakes 2 ("This insurance coverage and contractual dispute is proceeding under admiralty jurisdiction and is subject to federal maritime conflict of laws." (citations omitted))).

To the extent Lassiter argues that maritime jurisdiction would not be the "rule of decision" in the absence of the choice-of-law provision, the court in *Hale* specifically used the word "jurisdiction" instead of "state" to encompass maritime jurisdiction, as opposed to limiting the test to states.  588 F. Supp. at 1215.  Tellingly, shortly after the court defined the choice-of-law test, it concluded that Oklahoma law did not conflict with maritime law.  *See id.* at 1215–16 ("As for public policy considerations, the Court must look to those underlying admiralty law because maritime rules of decision would apply in the absence of a choice of Oklahoma law.  An agreement to indemnify an indemnitee against the consequences of his own negligent act does not violate any fundamental policy of maritime law." (citation omitted)).

In the absence of beneficial precedent, Lassiter turns to the Restatement.  (*See* Lassiter's Resp. to Great Lakes 2–3).  Under Section 187(2),

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, *or*

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [section] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Choice of Law § 187(2) (Am. L. Inst. 1988) (alteration and emphasis

13

added).

Lassiter's reliance is misplaced for two reasons. First, he does not cite any case in the Eleventh Circuit where a court has applied section 187(2) to matters arising under admiralty jurisdiction.

Second, even if section 187(2) applied, Lassiter fails to demonstrate how New York law conflicts with a fundamental policy of Florida. He argues that Florida prevents insurers from voiding coverage on technicalities, whereas New York voids coverage irrespective of whether a violation was material. (*See* Lassiter's Resp. to Great Lakes 8–9). Although Lassiter is correct that Florida Statute section 627.409(2) prohibits insurers from voiding a policy unless a violation "increased the hazard by any means within the control of the insured[,]" Fla. Stat. § 627.409(2) (alteration added) (*see* Lassiter's Resp. to Great Lakes 8–9), Florida has also carved out an exception to section 627.409(2) for surplus lines insurers, *see* Fla. Stat. § 626.913(4) ("[T]he provisions of chapter 627 do not apply to surplus lines insurance authorized under [sections] 626.913–626.937, the Surplus Lines Law." (alterations added)).

Courts agree that section 626.913(4) abrogates section 627.409. *See, e.g.*, *Aspen Specialty Ins. Co. v. River Oaks of Palm Beach Homeowner's Ass'n, Inc.*, No. 11-cv-81380, 2012 WL 3260398, at *3 (S.D. Fla. Aug. 8, 2012) (concluding section 627.409 does not apply to surplus lines insurers); *Hamilton Specialty Ins. Co. v. Chandalar, LLC*, No. 4:19cv173, 2019 WL 8071780, at *1 (N.D. Fla. Sept. 17, 2019) ("[Section] 627.409 does not apply to surplus-lines insurance." (alteration added)). And the parties here agree that Great Lakes is a surplus lines insurer. (*See* Great Lakes's SOF ¶ 23; AMIKids's Resp. to Great Lakes's SOF ¶ 23; Lassiter's Resp. to Great Lakes's SOF ¶ 23). Great Lakes is therefore exempt from section 627.409.[7]

---

[7] Lassiter provides a curious response to Great Lakes's invocation of section 626.913(4). He states Great Lakes waived any reliance on the statute because it did not "assert Section 626.913(4) as an affirmative

Even if New York voids coverage for immaterial violations, Florida law adopts a similar approach for surplus lines insurers.  Given the shared policy, the Court rejects Lassiter's argument that application of New York law would conflict with a fundamental policy of Florida.  *See* Restatement (Second) of Conflict of Law § 187(2)(b) (Am. L. Inst. 1988).  To the contrary, the two states appear to be in harmony when it comes to surplus lines insurers.

Without support from maritime law, precedent in this Circuit, or the Restatement, Lassiter's attempt to have the Court apply Florida law fails.  New York law applies to the Named Operator Warranty and any other provision that is not subject to entrenched federal maritime law.  *See Ocean Reef Charters LLC*, 996 F.3d at 1164.

**Application of Named Operator Warranty.**  Relying on New York law, the Court turns to the merits.  Great Lakes maintains that Kutner's operation of the vessel breached the Named Operator Warranty and rendered the entire Policy void.  (*See* Great Lakes's Mot. 6).  AMIKids argues Kutner never "operated" the vessel for purposes of the Named Operator Warranty.  (*See* AMIKids's Resp. to Great Lakes 10).  And Lassiter argues in the alternative that Kutner's conduct only constituted an inactionable breach.  (*See* Lassiter's Resp. to Great Lakes 13).  AMIKids and Lassiter fail to persuade.

New York law requires strict construction of warranties irrespective of a causal connection to the alleged loss.  *See Great Lakes Ins. SE v. Aarvik*, No. 18-cv-60705, 2019 WL 201258, at *3–4 (S.D. Fla. Jan. 15, 2019) (setting forth relevant New York law regarding the effect of a breach

---

defense to Lassiter's [c]ounterclaim[.]" (Lassiter's Reply to Great Lakes 6 (alterations added; capitalization omitted)).  But "[a]n affirmative defense is a defense which 'admits the essential facts of a complaint and sets up other facts in justification or avoidance.'"  *Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (alteration added; quoting *Will v. Richardson-Merrell, Inc.*, 647 F. Supp. 544, 547 (S.D. Ga. 1986)).  Here the Court relies on section 626.913(4) to ascertain the validity of a choice-of-law clause, an issue that has no bearing on allegations in Lassiter's Amended Counterclaim (*see* [ECF No. 108] 14–27).  Without a nexus to the Amended Counterclaim, Great Lakes's invocation is not construed as an affirmative defense.

of an express warranty in a marine insurance policy); *Hartford Fire Ins. Co. v. Mitlof*, 208 F. Supp. 2d 407, 412 (S.D.N.Y. 2002) ("Under New York law, recovery under a marine insurance contract is precluded if a warranty is breached, regardless of its materiality to the insurer's risk." (citation omitted)).

"The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous. As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists." *Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 32–33 (2d Cir. 1999) (citation and quotation marks omitted); *see also Baer v. Silversea Cruises Ltd.*, 752 F. App'x 861, 866 (11th Cir. 2018). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *In re Prudential Line Inc.*, 158 F.3d 65, 77 (2d Cir. 1998) (quoting *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998)). Determining whether an insurance policy is ambiguous "is a matter of law for the court to decide." *Flagship Marine Servs., Inc.*, 190 F.3d at 33 (citation and quotation mark omitted).

The Named Operator Warranty states that only a covered person may "operate" the vessel. (Policy 16). The Policy eliminates any ambiguity surrounding the meaning of "operate": "operate . . . means to navigate or to be in physical control of *or to be at the helm* of the Scheduled Vessel." (*Id.* 4 (alterations and emphasis added)). Reading these two provisions together requires the conclusion that any individual who helms the vessel is operating it and thus must also be covered under the Policy. This interpretation is consistent with the text of the Policy and supported by other decisions. *See, e.g.*, *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1157 (D. Colo. 2020) ("Accordingly, this court specifically interprets the term 'operator' as

'one who is navigating, in control of, or at the helm of the Scheduled Vessel.'").

Despite this reasonable interpretation of these provisions, AMIKids and Lassiter attempt to create ambiguity where none exists.  Citing a litany of authority and evidence, AMIKids uses the absence of a definition for "navigate" to argue Russick navigated, and consequently operated, the vessel at the time of the incident.  (*See* AMIKids's Resp. to Great Lakes 10–13).  It agrees that Kutner repeatedly helmed the vessel, including on the day it ran aground, but asserts that Russick's navigation and command of the vessel also fall within the ambit of the Policy's definition of "operate."  (*See id.* at 5 ("Although [Russick] was in command and physical control of the Vessel, [Kutner] . . . was at the helm under the command and control of . . . Russick." (alterations added)); *see also* Lassiter's Resp. to Great Lakes's SOF ¶¶ 50, 54).  AMIKids and Lassiter miss the point.

In placing "or" between "navigate[,]" "be in physical control of[,]" and "be at the helm of[,]" the Policy makes clear that "or" modifies each verb/prepositional phrase to make each nonexclusive of the others.  (Policy 4 (alterations added)); *see also OPTIS Wireless Tech. LLC v. ZTE Corp.*, No. 2:15-cv-300, 2016 WL 1599478, at *42 (N.D. Tex. Apr. 20, 2016) ("Although 'or' is used in both senses in common usage, 'the meaning of *or* is usually inclusive.'" (emphasis included; alteration adopted; quoting Bryan A. Garner, Garner's Dictionary of Legal Usage 639 (3d ed. 2011))).[8]  In other words, Russick could navigate the vessel while Kutner helmed it, and both would technically be "operating" the vessel for purposes of the Policy.

The nonexclusive nature of "or" is evident from the fact that an individual who "helm[s]" the vessel may also be technically "in physical control of" it by virtue of the helmsman's ability to steer or move the vessel.  (Policy 4 (alteration added)).  The same can be said for "navigate," *i.e.*, someone who navigates a ship can be "in physical control of" the vessel.  (*Id.*).  If the Policy sought

_____

[8] "[O]perate . . . means to navigate *or* to be in physical control of *or* to be at the helm of the Schedule Vessel."  (Policy 4 (alterations and emphasis added)).

to use "or" in an exclusive sense, then it would have prevented such overlap by prefacing the definition with a qualifier like "either." (*See id.* ("[O]perate . . . means [*either*] to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel." (alterations and emphasis added))) *see also Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1331–32 (Fed. Cir. 2001). But it does not. Instead, the overlapping meanings of the verbs/prepositional phrases and the absence of any qualifier necessarily create a situation where individuals can separately helm and navigate the vessel, yet both would be operating the vessel for purposes of the Policy.

Unfortunately for AMIKids and Lassiter, the distinction nevertheless means that even if Russick was in control, the Policy became void once Kutner first helmed the vessel because he was not "covered" under the Policy. (*See* Policy 16 ("It is warranted that the Scheduled Vessel will be operated only by covered persons.")).

Next, AMIKids invokes the Claims Manual [ECF No. 129-8] to argue that Great Lakes did not comply with its own policies. (*See* AMIKids's Resp. to Great Lakes 6, 13–15). The Claims Manual states that Great Lakes should not deny a claim for breach of warranty "where the only ground for rejection is the breach of warranty unless the circumstances of the claim are connected with the breach; or unless the breach relates to the safety of the vessel, its crew or a member of the public." (Claims Manual 10).

There are a few flaws with AMIKids's argument. First, under New York law, "parol evidence is admissible only when an insurance policy is ambiguous[.]" *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 124 n.5 (2d Cir. 2001) (alteration added; citation omitted). The Claims Manual constitutes parol evidence because the Policy never integrated it into the terms of the contract. (*See generally* Policy). The Court therefore cannot consider the Claims Manual because it constitutes extrinsic evidence.

Second, and more importantly, even if the Policy integrated the Claims Manual, Great Lakes complied with its obligations.  The parties agree that Kutner's operation of the vessel did not increase the likelihood that the incident would occur, but Kutner's operation of the vessel necessarily created a nexus, albeit a weak one, to the accident.  AMIKids cannot shake the nexus because, as Great Lakes observes, "the 'circumstances of the claim were connected with the breach' in that the Vessel ran aground while Mr. Kutner was operating."  (Great Lakes's Reply to AMIKids 2 (citation omitted)).[9]

Moving on from the Claims Manual, AMIKids's culminating argument against voiding the Policy for violating of the Named Operator Warranty relies on *Insurance Company of North American v. Zaglool*, 526 F. Supp. 2d 361 (E.D.N.Y. 2007).  (*See* AMIKids's Resp. to Great Lakes 14).  It is an anticlimactic culmination considering AMIKids completely misquotes *Zaglool*'s holding.  (*Compare id.* ("The court . . . *held* that 'it is unfathomable that the operation of the vessel by a mechanic was a breach of the policy when the policy itself requires the owner to maintain the vessel.'" (emphasis added; quoting *Zaglool*, 526 F. Supp. 2d at 366)), *with Zaglool*, 526 F. Supp. 2d at 366 ("Zaglool *counters* that Hartman's operation did not breach the warranty because . . . 'it is unfathomable that the operation of the vessel by a mechanic was a breach of the policy when the policy itself requires the owner to maintain the vessel.'" (alteration and emphasis added))).

Putting aside AMIKids's mischaracterization, *Zaglool* is distinguishable in that the court interpreted two provisions of the policy to cover the insured's liability for a mechanic's conduct. *See* 526 F. Supp. 2d at 368.  Here, AMIKids fails to identify a second provision of the Policy that

---

[9] AMIKids insists the Claims Manual's use of "connected" requires that Great Lakes demonstrate the breach "caused or contributed to the loss[.]"  (AMIKids's Reply to Great Lakes 7 (alteration added)).  Not so. "Connected" is not the same as "caused."  The distinction is evident from other sections of the Claims Manual that specifically require a causal link.  (*See, e.g.*, Claims Manual 12 ("A liability claim may be derived from the legal liability of a policyholder or 'covered person' to a third party, which has *caused or resulted in* injury or damage, to third party property[.]" (alteration and emphasis added))).

prompts the same outcome.

In sum, the Policy became void the moment Kutner first helmed the vessel. This conclusion is largely the byproduct of New York law which requires strict construction and compliance with maritime insurance warranties regardless of a breach's materiality. Great Lakes's Motion for Summary Judgment must therefore be granted with respect to the Named Operator Warranty.

### ii.   Criminal Conviction Omission

Although the foregoing discussion effectively ends the inquiry into coverage, the lifespan of the Policy — specifically when it became void — could impact issues around liability. These implications merit inquiry into whether Lassiter's omission on his insurance application voided the Policy. Once again, the Court applies federal maritime law where applicable, and if not, New York law. Upon doing so, it appears that a genuine issue of material fact exists as to whether Lassiter's omission could be deemed material to the underwriting process. The Court explains.

The well-settled maritime doctrine of *uberrimae fidei* is the controlling law within the Eleventh Circuit and therefore applies to this dispute. *See Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984) ("The general rule of [*uberrimae fidei*], requiring full disclosure, is well settled in this circuit, and as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority." (alteration added; citation omitted)). "*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Servs. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000) (citations omitted).

The *uberrimae fidei* doctrine requires the insured to exercise the "highest degree of good faith" in entering a marine insurance contract because "the underwriter often has no practicable

CASE NO. 21-21452-CIV-ALTONAGA/Torres

means of checking on either the accuracy or the sufficiency of the facts" that the insured furnishes

to the insurer before the insurer accepts the risk and sets the policy's conditions and premiums.

*Id.* (quoting Gilmore & Black, *The Law of Admiralty* 62 (2d ed. 1975); quotation marks omitted).

The insured's duty to disclose extends to those material facts into which the insurer may not have

directly inquired.  *See id.* at 1362–63 (citing *Jackson v. Leads Diamond Corp.*, 767 F. Supp. 268,

271 (S.D. Fla. 1991); other citation omitted).  Thus, an insured's material misrepresentation on an

application for marine insurance would violate the *uberrimae fidei* doctrine and warrant the

voidance of the entire disputed maritime insurance policy.  *See id.* at 1363.

The Court focuses its inquiry on whether a misrepresented fact is material.  The issue of

materiality is a mixed question of law and fact that can be answered as a matter of law only "if

reasonable minds could not differ on the question."  *Great Lakes Reinsurance (UK) PLC v. Roca*,

No. 07-23322-Civ, 2009 WL 200252, at *4 (S.D. Fla. Jan. 27, 2009) (citing *Woods v. Indep. Fire

Ins. Co.*, 749 F.2d 1493, 1496 (11th Cir. 1985)).

To determine an omission's materiality, the court must decide whether the omission

"'might have a bearing on the risk to be assumed by the insurer.'"  *Markel Am. Ins. Co. v.

Fernandez*, No. 09-20449-Civ, 2010 WL 11602243, at *3 (S.D. Fla. July 20, 2010) (quoting

*Fraser*, 211 F.3d 1359, 1363); *see also Great Lakes Reinsurance (UK) PLC v. Gonzalez*, No. 10-

21138-Civ, 2011 WL 13115484, at *1 (S.D. Fla. Sept. 12, 2011) ("[T]he standard is whether a

reasonable *insurer*, not insured, would find the misrepresentation material." (alteration added;

emphasis in original; citation omitted)).  A misrepresentation may warrant voidance of the marine

insurance policy even if the misrepresentation resulted from unintentional conduct, such as

mistake, accident, or forgetfulness.  *See Fraser*, 211 F.2d at 1363 (citing *Steelmet*, 747 F.2d at

695).

Great Lakes maintains it considers any prior criminal history material to underwriting a loan.  (*See* Great Lakes's Mot. 9–12).  Beric Usher, Great Lakes's underwriter, testified to this effect:

> The nature of the criminal conviction would determine whether we will proceed to write the business and, if so, what premium we would charge for the business.  All criminal convictions are referred to me personally.  I will then make a personal assessment and determine how much additional premium I'm going to levy based on the nature of the conviction and the time lapse since the conviction.

(Great Lakes's SOF, Ex. 7, Dep. Beric Anthony Usher [ECF No. 121-7] 25:5–12).[10]  Usher also finds support in his employer's Underwriting Manual, which states: "[A]nything that might influence our perception of a risk is material. . . .  These include enquiries as to past criminal convictions[.]"  (Great Lakes's Reply to Lassiter SOF, Ex. 3, Underwriting Manual [ECF No. 156-3] 3–4 (alterations added)).

Lassiter's expert underwriter and surplus lines broker disagree with Usher and believe the prior conviction would not materially affect a decision to underwrite insurance.  (*See* Lassiter's Resp. to Great Lakes's SOF, Ex. 1, Decl. Michael T. Fitzgerald [ECF No. 135-1] 3 ("A reasonable/prudent yacht underwriter would not find the misrepresentation regarding a fourth degree misdemeanor for domestic violence in 2005 to be material in issuing the subject yacht insurance policy."); Lassiter's Resp. to Great Lakes's SOF, Ex. 2, Decl. Joseph Kolisch [ECF No. 135-2] 3–4 (same)).

The Court agrees with Lassiter that Usher's post-hoc conclusions are self-serving and insufficient to conclude that Lassiter's criminal history is material.  The same can be said, however, for Fitzgerald's and Kolisch's conclusions.  This leaves the Underwriting Manual.

---

[10] Citations to deposition testimony rely on the pagination and line numbering in the original document.

Great Lakes insists the Underwriting Manual serves as undisputed evidence that Lassiter's conviction is material.  (*See* Great Lakes's Reply to Lassiter 8 (citing Underwriting Manual 3–4; *Great Lakes Ins. SE v. SEA 21-21 LLC*, No. 20-22865-Civ, 2021 WL 6135127, at *6 (S.D. Fla. Oct. 18, 2021)).  Although the Underwriting Manual indicates that underwriters must evaluate an applicant's criminal history, it does not necessarily follow that the applicant's history will materially affect the decision to underwrite.  After all, the Underwriting Manual does not state that a criminal conviction *is* material to the risk; rather, it states that such convictions "*might* influence [the insurer's] perception of a risk[.]" (Underwriting Manual 3–4 (alterations and emphasis added)).  If anything, the Underwriting Manual's hedging language undercuts Great Lakes's argument that reasonable minds cannot differ on the issue of materiality.

Nor can Great Lakes find solace in *SEA 21-21 LLC*.  There, the parties debated whether the insured's loss history would have been material to the insurer's decision to *offer* insurance. *See SEA 21-21 LLC*, 2021 WL 6135127, at *5–6.  The underwriting manual explicitly stated that previous losses "must be taken into consideration when deciding whether or not to *offer* terms[.]" *Id.* at 6 (alteration added; some emphasis omitted; quotation marks omitted).  Relying on this language, the undersigned held the underwriter might have considered the insured's loss history "before *offering* [the insured] marine insurance coverage[.]" *Id.* (alterations and emphasis added).

*Offering* insurance is not at issue here.  Unlike *SEA 21-21 LLC*, there is no dispute that Great Lakes would have still offered Lassiter insurance if it had known of his prior conviction. (*See* Dep. Beric Anthony Usher 68:8–12 ("[Question:] [H]ad you known about Mr. Lassiter's . . . pleading guilty to a misdemeanor fifteen years ago, would you have still written coverage or approved coverage?  [Answer:] Yes." (alterations added))).  Instead, Great Lakes argues it would have raised Lassiter's monthly premium to account for the risk created by

Lassiter's conviction.  (*See* Great Lakes's Mot. 10).[11]  But the cited provisions of the Underwriting Manual do not discuss higher premiums; rather, just as in *SEA 21-21 LLC*, the provisions address the binary act of offering or not offering insurance.  (*See, e.g.*, Underwriting Manual 4 ("ln terms of acceptability, we should never insure anyone with a conviction for any offence involving dishonesty[.] (alteration added))).

    *SEA 21-21 LLC* is thus distinguishable because it evaluated how the text of an underwriting manual impacted materiality in the context of *offering* insurance as opposed to raising premiums. Here, Great Lakes fails to direct the Court to any language in the Underwriting Manual indicating whether a criminal conviction is deemed material to adjusting premiums.  Absent such language, the Court cannot rely on the Underwriting Manual to conclude that Lassiter's prior conviction was material as a matter of law.

    In sum, the disputed declarations and testimony serve as the only relevant evidence to evaluate whether Lassiter's omission materially impacted the underwriting process.  Because the parties dispute the testimonial evidence, a genuine issue of material fact precludes the granting of their Motions for Summary Judgment.

---

[11] AMIKids cites *Great Lakes Reinsurance (UK) PLC v. Jorge Roca*, No. 07-23322-Civ, 2009 WL 10712148, at *2 (S.D. Fla. Feb. 23, 2009), to argue that Mr. Usher's admission negates any claim that Lassiter's omission materially affected the decision to provide coverage.  (*See* AMIKids's Resp. to Great Lakes 15–16).  In *Jorge Roca*, the court reiterated the principle that the "Eleventh Circuit's cases focus on an insured's . . . non-disclosure and how that 'could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk[.]'"  2009 WL 10712148, at *3 (alteration added; emphasis omitted; quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942–43 (11th Cir. 1986)).  AMIKids, however, undervalues the court's qualifying statement: "[the decision to accept or reject the risk] *predominantly* bears on the question of materiality[,]" *id.* (alterations and emphasis added) — an indication that the decision to accept or reject risk is not the *only* factor that bears on materiality.  Furthermore, the *Jorge Roca* court relied on *Kilpatrick*, where the Eleventh Circuit emphasized that judgement as a matter of law is only appropriate when the evidence "point[s] so strongly and overwhelmingly in favor of one party that reasonable persons could not reach a different conclusion." 795 F.3d at 943 (alteration added; citations omitted).  Here, as explained, the parties dispute evidence material to rendering a decision on this issue, and thus the issue can only be determined upon submission to the trier of fact.

### iii.   **Additional Insured**

The next issue requires the Court to determine whether AMIKids can still obtain coverage despite Lassiter's breach of the Named Operator Warranty.  Great Lakes's fourth cause of action seeks a determination that AMIKids is only a loss payee under the Policy, the result of which will preclude coverage for AMIKids.  (*See* SAC ¶¶ 44–49).  AMIKids concedes it is a loss payee but also maintains it is an additional insured[12] subject to coverage.  (*See* AMIKids's Resp. to Great Lakes 17–18).  Until recently, Great Lakes denied AMIKids's status as an additional insured, but after conceding the point, Great Lakes argues the status does not extend coverage to AMIKids. (*See* Great Lakes's Resp. to AMIKids 2).  Great Lakes is correct.

The parties disagree about the extent of AMIKids's coverage as an additional insured. Great Lakes cites the Additional Assured Endorsement (the "Endorsement") to argue the additional insured can only receive coverage for claims submitted by a third party.  The Endorsement states:

**Additional Assured Endorsement**

Notwithstanding the fact that such parties as advised are hereby named in their capacity as advised as Additional-Assured in this Policy, this cover [sic] will only extend insofar as they may be found liable to pay in the first instance for liabilities which are properly the responsibility of an Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which would not have been recoverable hereunder by the Assured had such claim been made or enforced against him.  Once indemnification hereunder has been made there shall be no further liability hereunder to make any further payment to any person or company whatsoever, including the Assured, in respect of that claim.

All rights granted to us together with all duties of an assured under the original insuring agreement shall also apply to any other named Additional-Assured jointly.

ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.

---

[12] The terms "additional insured" and "additionally assured" are interchangeable.

(Policy 18 (emphasis and capitalization in original)).  Because the present dispute involves no third-party claim, Great Lakes argues that AMIKids cannot receive coverage.

AMIKids agrees the Endorsement bars the additional insured from receiving coverage that exceeds Lassiter's coverage with respect to third party-claims but insists the Endorsement "does not limit AMIKids' additional insured status to third party claims *only*[.]"  (AMIKids's Reply to Great Lakes 3 (alterations and emphasis added)).  For this to be true, AMIKids would need some contractual provision or common law principle that defines what it means to be an additional insured.

As it so happens, New York law has such a common law principle: "the 'well-understood meaning' of [additional insured] is an 'entity enjoying the same protection as the named insured[.]'"  *Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co.*, 786 N.E.2d 863, 864 (N.Y. 2003) (alterations added; citations omitted) ("*Pecker*").  "[I]n the absence of unambiguous contractual language to the contrary, an additional insured 'enjoys the same protection as the named insured[.]'"  *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 821 N.Y.S.2d 1, 2 (N.Y. Sup. Ct. 2006) (alterations added; quoting *Pecker*, 786 N.E.2d at 864).  The issue then becomes whether the Policy unambiguously divests the additional insured from the same coverage as the insured.

It does.  Despite the presumption that an additional insured shares the same protection as the insured, the Endorsement limits AMIKids's coverage to third-party claims.  The additional insured's coverage "*only* extend[s] insofar as [the Additional Assured] may be found *liable* to pay in the first instance for *liabilities* which are properly the responsibility of an Assured[.]"  (Policy 18 (emphasis and alterations added)).  To the extent there is any doubt regarding what the Endorsement means by "liability[,]" it later clarifies that the "liability" would stem from a "claim

[that has] been made or enforced against him." (*Id.* (alterations added)).  Thus, the Endorsement's use of "only" silos AMIKids's coverage to claims that can be "made or enforced against" the insured.  (*Id.*).  No third-party claim, no coverage.

AMIKids does not address the Endorsement's use of "only."  And the Court cannot identify a plausible alternative construction of the Endorsement.  As such, the Court grants summary judgment to Great Lakes on count four: the Policy does not extend coverage to AMIKids under the current circumstances.

### B.   AMIKids's Motion for Summary Judgment Against Lassiter

AMIKids moves for summary judgment on two issues: (1) Lassiter's liability to AMIKids for breach of contract related to his failure to pay AMIKids for the value of the vessel and its expenses following the loss; and (2) Lassiter's affirmative cross-claims against AMIKids for specific performance and breach of contract.  (*See* AMIKids's Mot. Against Lassiter 1).  AMIKids loses on the first but prevails on the second.  The Court explains.

### i.   AMIKids's Breach of Contract Claim

The Lease Agreement between Lassiter and AMIKids states:

**Risk of Loss; Repairs**.  Upon delivery of the Vessel to [Lassiter], [Lassiter] assumes all risk of loss to the Vessel from any cause.  [Lassiter] shall be responsible for and shall replace, repair or reimburse AMIKids for any damage to the Vessel, whether caused by accident, negligence, or normal use during the Term, reasonable wear and tear from proper use alone excepted, whether or not the loss is covered by insurance.

(*Id.*, Ex. 2, Lease Agreement & Option to Purchase [ECF No. 126-2] 7 (alterations added) ("Lease Agreement")).  Section 5 sets temporal limitations on Lassiter's obligation to pay if the vessel incurs damages or expense:

[Lassiter] shall timely pay

   . . . .

(iii) any and all liabilities, liens, pledges, claims, debts, assessments, encumbrances, Damages, and Expenses which are: (a) *assessed* against the Vessel or against either Party and (b) arise or are incurred on or after the Commencement Date on account of this Agreement or on account of [Lassiter's] possession, use, or operation of the Vessel.

(*Id.* 5 (alterations and emphasis added)).  AMIKids interprets these two provisions to mean that Lassiter is currently in breach of the Lease Agreement because it has not paid the damages associated with the vessel's demise, including attorney's fees and costs.  (*See* AMIKids's Mot. Against Lassiter 4–5).

AMIKids overlooks the plain meaning of the word "assess."[13]  Assess means "to impose a fine or tax upon (a person, community, or property)[.]"  *Assess, v.*, OED Online https://www.oed.com/view/Entry/11849?isAdvanced=false&result=2&rskey=OH7OnT& (alteration added; last visited April 25, 2022); *see also Assess, Black's Law Dictionary* (11th ed. 2019) ("1. To calculate the amount or rate of (a tax, fine, etc.).  2. To impose (a tax, fine, etc.).  3. To determine the value of (something), esp. for tax purposes.  4. To evaluate the importance, quality, or extent of (someone or something).").  As Lassiter correctly observes, no entity outside of AMIKids — including the Court — has imposed a fine or cost upon Lassiter.  (*See* Lassiter's Resp. to AMIKids 2).  Nor can this precondition occur, considering Lassiter and AMIKids dispute the value of the vessel.  (*See* Lassiter's Resp. to AMIKids's SOF ¶ 8).  Until the Court assesses damages owed to AMIKids, AMIKids's requested relief is premature.

---

[13] "Overlooks" may be a generous term considering AMIKids completely omitted the "assessed against" language from the Motion.  (*See, e.g.*, AMIKids's Mot. Against Lassiter 4 ("Likewise, Section 5(d)(iii) of the Lease also requires Lassiter to timely pay AMIKids for '(iii) any and all liabilities, liens, pledges, claims, debts, assessments, encumbrances, Damages, and Expenses which . . . (b) arise or are incurred on or after the Commencement Date [of the Agreement] on account of this Agreement or on account of Lessee's possession, use, or operation of the Vessel.'" (alterations in original))).  Perhaps AMIKids undervalued the language of its own Lease Agreement, but the Court finds it curious that such an important provision would not be included in the Motion.

In response, AMIKids argues that under this logic "summary judgment on any contractual obligation would always be improper." (AMIKids's Reply to Lassiter 1). Not true. Summary judgment would only be improper if, like here, a party makes an obligation contingent on an amount being "assessed against" the counterparty in the contract. Not every lease agreement includes this language. And given its rich experience leasing vessels (*see* AMIKids's Mot. Against Lassiter 2), AMIKids had ample opportunity to remove the "assessed against" trigger.

Thus, the Court denies AMIKids's Motion on this issue.

### ii.   <u>Lassiter's Cross-claims</u>

Next, AMIKids argues that Lassiter's two cross-claims cannot survive summary judgment. The Court agrees.

First, Lassiter asserts a cause of action against AMIKids for specific performance. (*See* Lassiter's Am. Cross-cl. (*see* [ECF No. 108] 27–32) ¶¶ 11–15). Lassiter's claim fails because specific performance is a remedy, not a cause of action. *See La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010) ("Specific performance is an equitable remedy as opposed to a legal cause of action.").

Second, Lassiter alleges AMIKids breached the Lease Agreement when it failed to "consent to the tender of the vessel as a [constructive total loss, causing Lassiter to] sustain[] and continue[] to sustain economic damages including, but not limited to, the loss of up to $815,000.00 in insurance proceeds[.]" (Lassiter Am. Cross-cl. ¶ 18 (alterations added); *see also* Lassiter's Resp. to AMIKids 5 ("Lassiter had to pay in excess of $25,000 in maintenance and storage charges due to [AMIKids]'s decision to wait until after Lassiter filed the Cross-Claim[.]" (alterations added; capitalization omitted))).

Although it is unclear, Lassiter appears to rely on Section 15(f) of the Lease Agreement, which states: "[Lassiter] will not tender abandonment of the Vessel as a constructive total loss without the prior consent of AMIKids." (Lease Agreement 10 (alteration added)). Nothing in Section 15(f) suggests that AMIKids *must* concede the vessel is a constructive total loss within a specific timeframe, let alone that it is responsible for any costs associated with its delay. To the contrary, the Lease Agreement stipulates that Lassiter bears responsibility for, among other things, "(i) all expenses of attempting to locate, repossess, transport, and salvage the Vessel, (ii) all storage expenses, [and] (iii) all expenses arising from any damage, loss, or injury to persons or property caused by or related to the Vessel[.]" (*Id.* 2 (alterations added); *see also id.* 5, 9–10).

Together, these two provisions shift responsibility for the expenses associated with the vessel's constructive loss away from AMIKids and onto Lassiter. As such, Lassiter cannot conceivably recover on his breach of contract claim against AMIKids. With this in mind, the Court grants AMIKids's Motion for Summary Judgment on Lassiter's cross-claims.

**C.** **Russick's Motion to Bifurcate or Separate First-Party and Third-Party Trials**

Russick premises the Motion to Bifurcate on an understanding the Court would have to address "the Declaratory Action and the Negligence Action" at trial. (Mot. Bifurcate 7). But as he concedes, resolution of the declaratory relief action obviates the need for bifurcation. (*See id.* 9–12). The Motion to Bifurcate is therefore moot because the Court has determined Lassiter and AMIKids are not entitled to coverage under the Policy.

**IV.    CONCLUSION**

Given the quantity and complexity of the Motions, it is worth pausing to summarize the outcome of the foregoing analysis.

First, Great Lakes's Motion for Summary Judgment is granted in part, resulting in a

declaration that the Policy became void after Lassiter violated the Named Operator Warranty.  To the extent there is any dispute as to *when* the Policy became void, the Court can readily point to Kutner's first operation of the vessel, but a triable issue of fact remains as to whether Lassiter's omission of his criminal conviction voided the Policy even earlier.  Nevertheless, Great Lakes owes no coverage to Lassiter and AMIKids.  The natural consequence of this determination is that AMIKids's and Lassiter's Motion[s] for Summary Judgment Against Great Lakes are denied.

Second, AMIKids's Motion for Summary Judgment Against Lassiter is denied with respect to its breach of contract claim but granted with respect to Lassiter's breach of contract claim. Lassiter's claim against AMIKids rests on a fundamental misinterpretation of the Lease Agreement, and thus, fails.

Third, Russick's Motion to Bifurcate or Separate First-Party and Third-Party Claims is denied as moot.  The ensuing trial will focus on the remaining negligence action.

Being fully advised, it is

**ORDERED AND ADJUDGED** as follows:

1. Great Lakes Insurance SE's Motion for Summary Judgment **[ECF No. 122]** is **GRANTED** in part.

2. Reynolds Lassiter's Motion for Partial Summary Judgment **[ECF No. 125]** is **DENIED**.

3. AMIKids, Inc.'s Motion for Summary Judgment Against Defendant Reynolds Lassiter **[ECF No. 126]** is **GRANTED** in part.

4. AMIKids, Inc.'s Motion for Summary Judgment Against Great Lakes Insurance SE **[ECF No. 128]** is **DENIED**.

5. Norman Russick II's Motion to Bifurcate or Separate First-Party and Third-Party Trials **[ECF No. 130]** is **DENIED** as moot.

CASE NO. 21-21452-CIV-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 29th day of April, 2022.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record